IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 9 2014

JAMES W. McCORMACK, CLERK
By:_____ Solo
_____ DEP CLERK

| | |
|---|---|
| RLI INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14 cv 217 BRW |
| | ) |
| SAMCO CONSTRUCTION COMPANY, INC., | ) |
| CARL D. SAMUELS, and | ) |
| KATHLEEN A. SAMUELS, | ) |
| | ) This case assigned to District Judge Wilson |
| Defendants. | ) and to Magistrate Judge Kearney |

---

## COMPLAINT FOR BREACH OF CONTRACT AND RELATED RELIEF

---

COMES NOW, RLI Insurance Company (hereinafter sometimes referred to collectively as "Surety" or "Plaintiff"), by and through its undersigned counsel, and for its Complaint for Breach of Contract and Related Relief against the above-named Defendants asserts the following:

### I.      PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a foreign corporation duly organized and validly subsisting under the laws of the State of Illinois and is authorized to conduct business in the areas of suretyship and insurance in the State of Arkansas at all times relevant hereto.

2.      Upon information and belief, Samco Construction Company, Inc. ("Samco") is an Arkansas entity with a principal place of business in Cabot, Arkansas (Lonoke County).  Upon information and belief, Samco may be served with process through its registered agent, Carl D. Samuels, at 286 Old Country Lane, Cabot AR 72023.

3.      Upon information and belief, Defendant Carl D. Samuels ("C. Samuels") is an individual adult resident of the State of Arkansas who resides at 1101 Lakefront Road, Quitman AR 72131.

4.      Upon information and belief, Defendant Kathleen A. Samuels ("K. Samuels") is an individual adult resident of the State of Arkansas who resides at 1101 Lakefront Road, Quitman AR 72131.

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, inasmuch as complete diversity of citizenship exists between the parties, and the claim at issue is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

6.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in the United States District Court for the Eastern District of Arkansas, as it is the judicial district in which Samco is located and did business, the judicial district in which C. Samuels and/or K. Samuels resided at the time of execution of the Agreement of Indemnity, and it is the judicial district in which a substantial part of the events giving rise to Plaintiff's claim occurred.

7.      This matter lies properly in the Western Division of the United States District Court for the Eastern District of Arkansas, as the events giving rise to Plaintiff's claim occurred in Conway County, Arkansas.

## II.     FACTUAL ALLEGATIONS

8.      For and in consideration of the issuance of certain bond(s), on or about August 24, 2009, Defendant C. Samuels, as president of Samco and individually, and Defendant K. Samuels individually (sometimes collectively referred to as the "Indemnitors") each executed an Agreement of Indemnity, wherein they agreed to, *inter alia*:

> [E]xonerate, indemnify, and keep indemnified the Surety from and
> against any and all liability for losses and/or expenses of

whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor and Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

A true and correct copy of the Agreement of Indemnity is attached hereto as *Exhibit A*.

9.      Moreover, the Agreement of Indemnity states, in relevant part:

Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. Such payment shall be equal to the amount of the reserve set by the Surety or equal to such amounts as the Surety, and its sole judgement, deems sufficient to protect it from loss or potential loss.  In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety, the Contractors and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

10.     The Agreement of Indemnity further states, in relevant part:

The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be determined at the Surety's sole discretion, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, cost, expenses and attorneys' fees, including those of the Surety.

11.     In consideration of and in reliance upon the Agreement of Indemnity Agreement, Plaintiff issued Performance Bond and Payment Bond No. SSB398074 naming Samco as principal and the Arkansas Department of Parks & Tourism as obligee (the "Bond"), in connection with a project described as: Mather Lodge Dining Room/Kitchen Petit Jean State Park Morrilton, Arkansas, Project 9001103 (the "Project"). A true and correct copy of the Bond is attached hereto as *Exhibit B*.

12.     The Bond guarantees certain obligations of Samco under a construction contract by and between it and the Arkansas Department of Parks & Tourism dated January 2011 (collectively, the "Construction Contract").

13.     Surety received claims from certain subcontractors and suppliers alleging that they had furnished labor or materials to Samco for the performance of its work on the Project, but had not received payment in full therefore (without limitation, the "Payment Claims").

14.     Pursuant to its obligations under the Bond, Surety investigated and satisfied or otherwise resolved the Payment Claims in good faith.

15.     As a result of the Payment Claims, Surety has incurred a net loss, excluding attorneys' fees, costs, and expenses, of $239,727.72 (as of April 7, 2014). The following payments have been made by Plaintiff on the Payment Claims:

| Claimant | Amount Paid |
|---|---|
| Arkansas Automatic Sprinkler, Inc. | $41,000.00 |
| Colorado Log Homes, Inc. | $27,451.62 |
| Crow Paving, Inc. | $26,465.73 |
| Faulkner Company, Inc. | $24,175.00 |
| JWM, Inc. | $31,300.00 |
| Markham Restaurant Supply | $11,908.59 |
| Plumbing & Maintenance, Inc. | $48,732.78 |
| Walker Heating & Cooling, Inc. | $28,694.00 |

16.     Plaintiff may incur additional loss on the Payment Claims.

### III.   COUNT I: BREACH OF CONTRACT

17.   Plaintiff hereby reiterates the allegations contained in the foregoing paragraphs of its Complaint as if set forth fully herein.

18.   The Agreement of Indemnity constitutes a valid and binding contract between Plaintiff and Defendants founded upon sufficient consideration.

19.   Pursuant to the Indemnity Agreement, Defendants agreed to, *inter alia*:

> [E]xonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor and Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

Defendants agreed further:

> Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. Such payment shall be equal to the amount of the reserve set by the Surety or equal to such amounts as the Surety, and its sole judgement, deems sufficient to protect it from loss or potential loss. In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety, the Contractors and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

20.   The Agreement of Indemnity further states, in relevant part:

> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be determined at the Surety's sole discretion, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, cost, expenses and attorneys' fees, including those of the Surety.

21.     Plaintiff has incurred a net loss in the amount of not less than $239,727.72, exclusive of attorneys' fees, costs, and expenses, by reason of Plaintiff's having issued the Bonds.

22.     Plaintiff made collateral demand upon the Defendants via letter dated June 7, 2013, a true and accurate copy of which is attached as *Exhibit C*.

23.     Despite demand, Defendants have failed and/or refused to exonerate, reimburse, indemnify and hold harmless Plaintiff from said loss, or to deposit collateral.

24.     Said failure and refusal constitutes a material breach of the Agreement of Indemnity.

25.     As a result of said material breach, Plaintiff has been damaged in an amount not less than $239,727.72, plus interest, attorneys' fees, costs, and other expenses.

### IV.     COUNT II:    REIMBURSEMENT – Indemnity Agreement

26.     Plaintiff hereby reiterates the allegations contained in the preceding paragraphs of its Complaint as if set forth fully herein.

27.     Pursuant to the Agreement of Indemnity, Defendants agreed to and are obligated to reimburse Plaintiff for its loss incurred under the Bonds as follows:

> In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety, the Contractors and Indemnitors, the Surety shall be

entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

28.     Despite demand, Defendants have failed to so reimburse Plaintiff.

29.     By reason of Defendants failure to so reimburse Plaintiff, Plaintiff has been damaged in an amount not less than $239,727.72, plus interest, attorneys' fees, costs, and other expenses, the exact amount to be proven at trial.

## V.     COUNT III:  REIMBURSEMENT – Common Law

30.     Plaintiff hereby reiterates the allegations contained in the preceding paragraphs of its Complaint as if set forth fully herein.

31.     Pursuant to the common law doctrine of reimbursement, Defendant Samco, as principal under the Bond, is obligated to reimburse Plaintiff for its loss incurred under the Bond.

32.     Despite demand, Defendant Samco has failed to so reimburse Plaintiff.

33.     By reason of Defendant Samco's failure to so reimburse Plaintiff, Plaintiff has been damaged in an amount not less than $239,727.72, plus interest, attorneys' fees, costs, and other expenses, the exact amount to be proven at trial.

## VI.     COUNT IV: EQUITABLE SUBROGATION

34.     Plaintiff hereby reiterates the allegations contained in the preceding paragraphs of its Complaint as if set forth fully herein.

35.     As performing surety for certain obligations of Defendant Samco to the payment claimants pursuant to the Bond, Plaintiff is equitably subrogated to the rights of the payment claimants against Defendant Samco as to the amounts paid by Plaintiff to the payment claimants.

## VII. COUNT V: COMMON LAW RIGHT OF INDEMNIFICATION

36.     Plaintiff hereby reiterates the allegations contained in the foregoing paragraphs of its Complaint as if set forth fully herein.

37.     Pursuant to its common law right of indemnification, Plaintiff is entitled to be indemnified by its principal, Samco, for loss suffered by it, as surety, by reason of having executed the Bond, including but not limited, to all claims asserted against Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Surety prays for the following relief:

1.     That proper process be issued requiring each Defendant to answer Surety's Complaint;

2.     For judgment against each of the Defendants, jointly and severally, in the amount of not less than $239,727.72, plus prejudgment interest, legal fees, costs, and expenses which Surety has incurred and may continue incur by reason of its execution of the Bond, the failure of Defendants to perform or comply with the covenants and conditions of the Agreement of Indemnity, Surety's enforcement of the Agreement of Indemnity, and in the prosecution and collection of this action; and

3.     For such further relief as may be appropriate in accordance with the nature of this cause.

Respectfully submitted,

Justin D. Wear          AR 2013004 / TN 23954
John M. Gillum          TN 10230
MANIER & HEROD
2200 One Nashville Place
150 Fourth Avenue North
Nashville, TN  37219
(615) 244-0030 Telephone
(615) 242-4203 Facsimile
jwear@manierherod.com
jgillum@manierherod.com

*Attorneys for Plaintiff*

# Exhibit A

# Agreement of Indemnity

**RLI Insurance Company**
Peoria, Illinois 61615

THIS AGREEMENT of Indemnity, made and entered into this _____24th_____ day of _____August_____, _____2009_____

by _____Samco Construction Company, Inc._____
<span style="font-size:smaller">(insert full name of Contractor)</span>
_____2796 SOUTH SECOND STREET STE A, Cabot, AR 72023_____ (hereinafter called the Contractor) and the undersigned, (hereinafter called the Indemnitors, if any), and **RLI Insurance Company**, located in Peoria, Illinois, (hereinafter called Surety).

## WITNESSETH

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations, whether in its own name solely or jointly with others, may desire or be required to give or procure certain surety bonds, undertakings, or instruments of guarantee, and to renew, continue, or substitute the same from time to time, or to give or procure new bonds, undertakings, or instruments of guarantee with the same or different penalties and/or conditions in renewal, continuation, extension, or substitution thereof (any one or more of which are hereinafter called Bond or Bonds) or the Contractor or Indemnitors may request the Surety to refrain from cancelling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express condition that this Agreement of Indemnity (the Agreement) should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have a substantial, material, and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

NOW, THEREFORE, in consideration of the foregoing premises and of the covenants set forth herein, the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

## PREMIUMS

FIRST: The Contractor and Indemnitors jointly and severally will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

## INDEMNITY

SECOND: The Contractor and Indemnitors jointly and severally shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor and Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. Such payment shall be equal to the amount of the reserve set by the Surety or equal to such amounts as the Surety, and its sole judgement, deems sufficient to protect it from loss or potential loss. In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety, the Contractors and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

## ASSIGNMENT AND SECURITY INTEREST

THIRD: The Contractor and the Indemnitors (jointly and severally) hereby assign, transfer and set over, and grant a security interest to, the Surety, as collateral to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor and the Indemnitors to the Surety, whether currently in existence or hereafter arising and regardless of whether the same is currently contemplated, in the following (the Collateral):

   (a) all the rights of the Contractor and/or Indemnitors arising in any manner (whether directly or indirectly) from the Bond;

   (b) all the rights, title, and interest of the Contractor and/or Indemnitors in and to any and all machinery, equipment, goods, plants, tools, inventory and materials which are, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in transit, in storage elsewhere, or in transformation to any and all of said sites;

   (c) all the rights, title and interest of the Contractor and/or Indemnitors in and to any and all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts;

   (d) all actions, causes of actions, claims and demands whatsoever which the Contractor and/or Indemnitors may have or acquire against any subcontractor, laborer or material man, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor or Indemnitors has an interest;

   (e) all accounts and accounts receivable, and all actions, causes of actions, claims and demands whatsoever which the Contractor and/or Indemnitors may have or acquire against, any obligee, general contractor, subcontractor, intermediary, owner or other responsible party with regard to the contractual work or obligation referred to in the Bonds or elsewhere.

   Notwithstanding the foregoing, the assignment, transfer and security interest granted hereunder shall only be effective and valid upon the occurrence of any one or more of the following:

   (1) any abandonment, forfeiture or breach of any contracts or obligations referred to in the Bonds or of any breach of any said Bonds;

   (2) any breach of the provisions of any of the paragraphs of this Agreement;

   (3) a default in discharging such other indebtedness or liabilities when due;

   (4) any assignment by the Contractor and/or Indemnitor(s) for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor and/or Indemnitor(s) whether insolvent or not;

   (5) any proceeding which deprives the Contractor or Indemnitor(s) of the use of any of the machinery, equipment, goods, plant, tools, inventory and materials comprising any part or all of the Collateral; and/or

   (6) the Contractor and/or Indemnitor(s) dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if Contractor and/or Indemnitor is an individual.

**TRUST FUND**

FOURTH: If any of the Bonds are executed in connection with a contract or obligation, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract or obligation shall be held as a trust fund in which the Surety has an interest, for the payment of debts incurred in the performance of the contract or obligation and for labor, materials, and services furnished in the prosecution of the work provided in said contract or obligation or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract/contracts or obligations covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract/contracts or obligations for which the Surety would be liable under any of said Bonds, said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

**SECURITY AGREEMENT**

FIFTH: That this Agreement shall constitute a Security Agreement and the grant of a security interest in the Collateral to the Surety and also a financing statement, both in accordance with the provisions of the Uniform Commercial Code (the "Code"), in every jurisdiction where such Code is in effect, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A photocopy or facsimile of this Security Agreement may be filed for recording in lieu of a financing statement(s) in each and every jurisdiction where the Code so permits. The Surety is hereby appointed as the attorney in fact to execute and file such additional instruments and financing statements on behalf of the Contractor and Indemnitors as may be reasonably necessary to perfect the foregoing security interest.

**TAKEOVER**

SIXTH: In the event of any breach or default asserted by the obligee on any said Bonds, or where the Contractor has abandoned work on or forfeited any contract or contracts or obligations covered by any said Bonds, or has failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, without any obligation, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts or obligations covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

**CHANGES**

SEVENTH: The Surety is authorized and empowered, at its sole option and without obligation, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any contracts or obligations referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying any contracts, including, but not limited to, any change in the time for the completion of any contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors.

EIGHTH: In the event of any claim or demand being made by the Surety against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a Bond or Bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

NINTH: The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such Bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

**ADVANCES**

TENTH: The Surety is authorized and empowered, at its sole discretion and without any obligation, to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts or obligations referred to in, or guaranteed by the Bonds; and all money expended in the completion of such contracts or obligations by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts or obligations, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

**BOOKS AND RECORDS**

ELEVENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

**DECLINE EXECUTION**

TWELFTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the Bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability of the Contractor and/or the Indemnitors that may arise by reason of having executed the Bid or Proposal Bond.

**NOTICE OF EXECUTION**

THIRTEENTH: The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Contractor and Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

FOURTEENTH: The Contractor and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all right to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

FIFTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be determined at the Surety's sole discretion, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, cost, expenses and attorneys' fees, including those of the Surety.

SIXTEENTH: The Contractor and Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Surety is construed toward its obligee.

SEVENTEENTH: The word Contractor and Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

## SURETIES

EIGHTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

NINETEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

## OTHER INDEMNITY

TWENTIETH: That the Contractor and Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor and Indemnitors or others, it being expressly understood and agreed by the Contractor and Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## INVALIDITY

TWENTY-FIRST: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Contractor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

If any provision or provisions of this Agreement be void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

## ATTORNEY IN FACT

TWENTY-SECOND: The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney in fact.

## TERMINATION

TWENTY-THIRD: This Agreement may be terminated by the Contractor and Indemnitors upon twenty days' written notice sent by registered mail to the Surety at 9025 N. Lindbergh Dr. Peoria, Illinois 61615; but any such notice of termination shall not operate to modify, bar, or discharge the Contractor and Indemnitors as to the Bonds that may have been theretofore executed.

TWENTY-FOURTH: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written addendum executed to form a part hereof.

TWENTY-FIFTH: THE CONTRACTOR AND INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER WHATEVER BONDS (WHETHER OR NOT COVERED BY ANY OTHER AGREEMENT OF INDEMNITY SIGNED AT ANY TIME BY ANY ONE OR MORE OF THE INDEMNITORS - ALL OTHER AGREEMENTS OF INDEMNITY OF ANY KIND BEING SUPPLEMENTAL TO THIS), MAY BE EXECUTED BY THE SURETY ON BEHALF OF THE CONTRACTOR AND INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

TWENTY-SIXTH: _____
_____
_____
_____

TWENTY-SEVENTH: Hereof is set forth on the Signature Page Addendum attached hereto, which together with the Acknowledgement Page constitutes a part of this Agreement.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

ATTEST

**RLI Insurance Company**
(Surety)

By _____

By _____ (Seal if required)

Print Name and Title _____

Print Name and Title _____

**Contractor**

ATTEST

Samco Construction Company, Inc.                    71-0836353
Name & Social Security/FIN # of Contractor  (Please print or type)

By _____

2796 SOUTH SECOND STREET STE A, Cabot, AR 72023
Address, City, State & Zip of Contractor (Please print or type)

By _____ (Seal if required)

Print Name and Title Kathleen A. Samuels        Secretary

Print Name and Title Carl D. Samuels, Sr.              President

WITNESS SIGNATURE:

Print Name   ALAN ROGERS

Print Name _____

**Corporate Indemnitors**

ATTEST

Name of Corporate Indemnitor and FIN # (Please print or type)

Address, City, State & Zip of Corporate Indemnitor (Please print or type)

By _____

By _____ (Seal if required)

Print Name and Title _____

Print Name and Title _____

ATTEST

Name of Corporate Indemnitor and FIN # (Please print or type)

Address, City, State & Zip of Corporate Indemnitor (Please print or type)

By _____

By _____ (Seal if required)

Print Name and Title _____

Print Name and Title _____

ATTEST

Name of Corporate Indemnitor and FIN # (Please print or type)

Address, City, State & Zip of Corporate Indemnitor (Please print or type)

By _____

By _____ (Seal if required)

Print Name and Title _____

Print Name and Title _____

ATTEST

Name of Corporate Indemnitor and FIN # (Please print or type)

Address, City, State & Zip of Corporate Indemnitor (Please print or type)

By _____

By _____ (Seal if required)

Print Name and Title _____

Print Name and Title _____

ATTEST

Name of Corporate Indemnitor and FIN # (Please print or type)

Address, City, State & Zip of Corporate Indemnitor (Please print or type)

By _____

By _____ (Seal if required)

Print Name and Title _____

Print Name and Title _____

**Individual Indemnitors**

Carl D. Samuels                                   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
Name & Social Security # of Individual Indemnitor (Please print or type)

WITNESS SIGNATURE:                    1101 Lakefront Road, Quitman, AR 72131
                                      Address, City, State & Zip of Individual Indemnitor (Please print or type)

*[signature]*                         By *[signature]*

Print Name _____ Alan Rogers _____    Print Name _____ Carl D. Samuels _____

_____
Print Name _____


Kathleen A. Samuels                               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
Name & Social Security # of Individual Indemnitor (Please print or type)

WITNESS SIGNATURE:                    1101 Lakefront Road, Quitman, AR 72131
                                      Address, City, State & Zip of Individual Indemnitor (Please print or type)

*[signature]*                         By *[signature]*

Print Name _____ Alan Rogers _____    Print Name _____ Kathleen A. Samuels _____

_____
Print Name _____


_____
Name & Social Security # of Individual Indemnitor (Please print or type)

WITNESS SIGNATURE:                    _____
                                      Address, City, State & Zip of Individual Indemnitor (Please print or type)

_____   By _____

Print Name _____    Print Name _____

_____
Print Name _____


_____
Name & Social Security # of Individual Indemnitor (Please print or type)

WITNESS SIGNATURE:                    _____
                                      Address, City, State & Zip of Individual Indemnitor (Please print or type)

_____   By _____

Print Name _____    Print Name _____

_____
Print Name _____


_____
Name & Social Security # of Individual Indemnitor (Please print or type)

WITNESS SIGNATURE:                    _____
                                      Address, City, State & Zip of Individual Indemnitor (Please print or type)

_____   By _____

Print Name _____    Print Name _____

_____
Print Name _____


_____
Name & Social Security # of Individual Indemnitor (Please print or type)

WITNESS SIGNATURE:                    _____
                                      Address, City, State & Zip of Individual Indemnitor (Please print or type)

_____   By _____

Print Name _____    Print Name _____

_____
Print Name _____

**Partnership Indemnitors**

WITNESS SIGNATURE:          Name of Partnership Indemnitor (Please print or type)
_____

Address, City, State & Zip of Partnershipl Indemnitor (Please print or type)

_____   By _____

Print Name _____   Print Partner Name _____

_____

Print Name _____

WITNESS SIGNATURE:          Name of Partnership Indemnitor (Please print or type)
_____

Address, City, State & Zip of Partnership Indemnitor (Please print or type)

_____   By _____

Print Name _____   Print Partner Name _____

_____

Print Name _____

### IMPORTANT:  ALL SIGNATURES MUST BE ACKNOWLEDGED ON THE ATTACHED FORM(S).

State of _____ Arkansas _____
County of _____ Lonoke _____ ss:
   On the ____24th____ day of ____August____, ____2009____, before me personally came
_____ Carl D. Samuels, Jr. _____
to me known, who, being by me duly sworn, did depose and say that he resides in _____ Quitman, AR _____
that he is the ____President____ of the ____Samco Construction and Paving, Inc.____, the corporation
which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said
Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that
he signed his name to the said Agreement of Indemnity by like order.

                                     Notary Public

State of _____
County of _____ ss:
   On the _____ day of _____, _____, before me personally came
_____
to me known, who, being by me duly sworn, did depose and say that he resides in _____
that he is the _____ of the _____, the corporation
which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said
Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that
he signed his name to the said Agreement of Indemnity by like order.

                                     Notary Public

State of _____
County of _____ ss:
   On the _____ day of _____, _____, before me personally came
_____
to me known, who, being by me duly sworn, did depose and say that he resides in _____
that he is the _____ of the _____, the corporation
which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said
Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that
he signed his name to the said Agreement of Indemnity by like order.

                                     Notary Public

CORPORATION ACKNOWLEDGMENT

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____

to me known, who, being by me duly sworn, did depose and say that he resides in _____

that he is the _____ of the _____
_____ the corporation
which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said
Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that
he signed his name to the said Agreement of Indemnity by like order.

                                                        _____
                                                                Notary Public

*CORPORATION ACKNOWLEDGMENT*

---

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____

to me known, who, being by me duly sworn, did depose and say that he resides in _____

that he is the _____ of the _____
_____ the corporation
which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said
Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that
he signed his name to the said Agreement of Indemnity by like order.

                                                        _____
                                                                Notary Public

*CORPORATION ACKNOWLEDGMENT*

---

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____

to me known, to be a partner of the partnership of _____
who acknowledged to me that he/she is duly authorized to execute this Agreement on behalf of and as the act of the partnership, and
that he/she has executed this Agreement on behalf of and as the act of the partnership.

                                                        _____
                                                                Notary Public

*PARTNERSHIP ACKNOWLEDGMENT*

---

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____

to me known, to be a partner of the partnership of _____
who acknowledged to me that he/she is duly authorized to execute this Agreement on behalf of and as the act of the partnership, and
that he/she has executed this Agreement on behalf of and as the act of the partnership.

                                                        _____
                                                                Notary Public

*PARTNERSHIP ACKNOWLEDGMENT*

---

State of _____ Arkansas _____
County of _____ Lonoke _____ ss:
    On the __24th__ day of _____ August _____, __2009__, before me personally came
_____ Carl D. Samuels, Jr. _____

to me known, and known to me to be the the individual who executed the attached Agreement of Indemnity and acknowledged that he
executed the same.

                                                        _____
                                                                Notary Public

*INDIVIDUAL ACKNOWLEDGMENT*

---

State of _____ Arkansas _____
County of _____ Lonoke _____ ss:
    On the __24th__ day of _____ August _____, __2009__, before me personally came
_____ Kathleen A. Samuels _____

to me known, and known to me to be the the individual who executed the attached Agreement of Indemnity and acknowledged that he
executed the same.

                                                        _____
                                                                Notary Public

*INDIVIDUAL ACKNOWLEDGMENT*

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____
to me known, and known to me to be the the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

_____
Notary Public

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____
to me known, and known to me to be the the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

_____
Notary Public

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____
to me known, and known to me to be the the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

_____
Notary Public

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____
to me known, and known to me to be the the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

_____
Notary Public

State of _____
County of _____ ss:
    On the _____ day of _____, _____, before me personally came
_____
to me known, and known to me to be the the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

_____
Notary Public

INDIVIDUAL ACKNOWLEDGMENT   INDIVIDUAL ACKNOWLEDGMENT   INDIVIDUAL ACKNOWLEDGMENT   INDIVIDUAL ACKNOWLEDGMENT   INDIVIDUAL ACKNOWLEDGMENT

Contractor's Initials _____ Date _____ August 24th, 2009

P0033504

# Exhibit B

Bond Number: SSB398074

## PERFORMANCE BOND AND PAYMENT BOND
### Section 00614 / Rev: Mar-10

    We SAMCO CONSTRUCTION CO., INC., hereinafter referred to as Principal, and RLI Insurance Company, hereinafter referred to as Surety, are held and firmly bound unto Arkansas Department Of Parks & Tourism as obligee, hereinafter referred to as Owner, in initial amount of · $3,745,000.00 , said amount to be deemed a performance bond payable to Owner under the terms of this Performance and Payment Bond Agreement. The Principal and Surety state that the Surety is a solvent corporate surety company authorized to do business in the State of Arkansas.

    Principal has by written agreement dated 1/05/2011 entered into a capital improvement contract (hereinafter referred to as "Contract") with the Owner for: _____

_____ Mather Lodge Dining Room/Kitchen ABA# 9001103 _____

_____ The above referenced Contract is incorporated herein by reference.

    Under this Performance and Payment Bond Agreement, the Principal and Surety shall be responsible for the following:

    a. Principal shall faithfully perform the above referenced Contract, which is incorporated herein by reference and shall pay all indebtedness for labor and materials furnished or performed under the Contract.

    b. In the event that the Principal fails to perform the Contract, the Principal and the Surety, jointly and severally, shall indemnify and save harmless the Owner from all cost and damage which the Owner may suffer by reason of Principal's failure to perform the Contract. Said indemnification shall include, but not be limited to, full reimbursement and repayment to the Owner for all outlays and expenses which the Owner may incur in making good any such default or failure to perform the Contract by the Principal.

    c. Principal shall pay all persons all indebtedness for labor or material furnished or performed under the Contract and in doing so this obligation shall be null and void. In the event that Principal fails to pay for such indebtedness, such persons shall have a direct right of action against the Principal and Surety, jointly and severally, under this obligation, subject to the Owner's priority.

    d. Principal shall guarantee the faithful performance of the prevailing hourly wage clause as provided in the Contract.

This bond is given in accordance with state and federal laws and regulations, including but not limited to Ark Code Ann. 18-44-503, 19-4-1405 and 22-9-401 et seq.

The Surety guarantees that the Principal shall comply with Ark. Code Ann. 22-9-308 (d) by payment and full compliance with all prevailing hourly wage contract provisions where the contract amount exceeds the amount provided in Ark. Code Ann. 22-9-302(1).

Any changes made in the terms of the Contract, including but not limited to, the amount of the Contract, or in the work to be done under it, or the giving by the Owner of any extension of time for the performance of the contract, or any other forbearance on the part of either the Owner or the Principal to the other shall not in any way release the Principal and the Surety or Sureties or either or any of them, their heirs, personal representatives, successors or assigns from their liability hereunder, notice to and consent of the Surety or Sureties of any such change, extension or forbearance being are hereby voluntarily waived. In no event shall the aggregate liability of the Surety exceed the Contract documents.

The Performance and Payment Bond Agreement is binding upon the above named parties, and their successors, heirs, assigns and personal representatives.

Executed by the parties who individually represent that each voluntarily enters into and has the authority to enter into this agreement.

**SAMCO CONSTRUCTION CO., INC.**

BY: _____

     Contractor                                Date

**RLI Insurance Company**

BY: _____

     Miki J. Rogers ARLic.# 29256, Arkansas Resident Local Agent or Non-Resident Agent / Attorney-in-Fact

Agent's License Number                          Surety Company's NAIC # 13056

**BABB BONDING, INC.**
Agent                                          Date

**801 E. KIEHL, P.O. BOX 6255**
Address

**SHERWOOD**       **PULASKI**         **AR**          **72124**
City               County           State      Zip Code

Business Phone: **501-834-5801**
Fax:       **501-834-7526**
E-Mail:      **alan@babbbonds.com or miki@babbbonds.com**

# Exhibit C



**RLI Surety**
*A division of RLI Insurance Company*

Claims Department | P.O. Box 3961 | Peoria, IL 61612-3961
UPS/FedEx: 9025 N. Lindbergh Drive | Peoria, IL 61615-1431
P: 312-360-1566 | F: 866-692-6796 | www.rlicorp.com

June 7, 2013

Kathleen Samuels
Samco Construction
P. O Box 1382
Cabot, AR 72023

RE:  Principal:  Samco Construction
     Bond No:    SSB0398074
     Claim No:   00275864
     Claimant:   Various
     Project:    Mather Lodge
     Surety:     RLI Insurance Company

## DEMAND FOR COLLATERAL

Dear Mr. and Ms. Samuels:

I am an authorized representative of the Surety, RLI Insurance Company, Inc. ("RLI"). I am writing you because RLI has received numerous claims against the payment bond for the project referenced above. This letter is divided into several sections. The first section entitled the "Indemnity Agreement" recounts several of the provisions of the "Indemnity Agreement" that are referred to later in the letter. The second section of the letter contains a description of the claims that are currently pending for the project. The third section of the letter contains RLI Insurance Company's demand for you to meet your obligations under the "Indemnity Agreement" by immediately paying $326,816.44 to RLI to be used in paying any judgment that may be rendered against RLI.

## THE INDEMNITY AGREEMENT

In order to induce RLI, to write bonds with *Samco Construction Company, Inc.* listed as the Principal you signed an *"Agreement of Indemnity."* A copy of the agreement is attached to this letter. In the "Agreement of Indemnity" in a section titled "Settlements" you agreed that:

> *The Surety shall have the right to adjust, settle or compromise any claim demand, suit or judgment upon the Bonds unless the Contractor and Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be determined at the Surety's sole discretion, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, cost, expense and attorney's fees, including those of the Surety.*

**DIFFERENT WORKS**



In the "Agreement of Indemnity" in a section titled "Indemnity" you agreed to:

*...exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court cost and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By failure of the of the Contractor and Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.*

*Payment by reason of the aforesaid cause shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made payment therefore.   Such payment shall be equal to the amount of the reserve set by the Surety or equal to such amounts as the Surety, [at] its sole judgment, deems sufficient to protect it from potential loss.  In the event of any payment by the Surety, the Contractor and the Indemnitors further agree that in any accounting between the Surety, the Contractors and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that is was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.*

## CLAIMS

Below is a list of claim that RLI has received:

| Claimant | Amt. Claimed | Amt. Admited | Disputed Amt |
|---|---|---|---|
| Plumbing and Maintenance | $48,732.37 | $11,385.78 | $37,346.59 |
| Arkansas Auto Sprinkler | $41,407.36 | $18,733.00 | $22,674.36 |
| Colorado Log Homes | $27,451.62 | $972.23 | $26,479.39 |
| Circle M Construction | $28,657.10 | $12,378.95 | $16,278.15 |
| Walker's Inc. | $82,000.00 | $60,038.52 | $21,961.48 |
| Crow Paving | $56,544.99 | $25,434.00 | $31,110.99 |
| Canant Construction | $13,433.00 | $0.00 | $13,433.00 |
| WJ Smith | $3,415.00 | $2,815.00 | $600.00 |
| Faulkner Company | $25,175.00 | $15,516.14 | $9,658.86 |

**$326,816.44**



The claims total $326,816.44.  Samco has admitted that payment of portions of these claims are due and owning. It has attempted to make payment of the undisputed amount of some of the claims with checks marked "full and final."  The claimants have refused to cash such checks fearing they would waive their entire claims.  RLI is required to pay all undisputed portions of claims under the terms of the bond. Accordingly, RLI has asked Samco to reissue the checks without "full and final" printed on the checks.  Samco has refused to do this.  Samco has disputed some of the claimed amounts due to back-charges, deductive change orders, and unapproved change orders.  However, Samco has not supported the back-charges, deductive change orders or unapproved change orders with any documentation at all despite RLI's repeated request that it do so.  Samco has not responded to emails to it and does not have a working phone or fax number.  Samco's lack of cooperation is preventing RLI from asserting the defenses to the claims that Samco alleges exist.  Here is a list of key information that we need regarding the claims.

*Plumbing and Maintenance*: Samco said it had an open balance of $11,385.78. Its original contract was for $203,200 and there was one change order for $3500. Samco said it had paid a total of $195,314.22 to Pluming and Maintenance.  Plumbing and Maintenance said it had an additional change order in the amount of $4,800.  I have attached a copy of the change order to this letter.  We have never received Samco's position regarding this change order.  Plumbing and Maintenance says it only received payments totaling $162,797.63.   This is a $33,000 difference from what you claim to have paid them.  We need copies of the checks you sent to Plumbing and Maintenance.

*Arkansas Automatic Sprinklers:*  Samco said that its contract amount was $59,819. Samco has not addressed what appears to be an approved change order in the amount of $22,675.00.  I have attached a copy of the change order.  We need Samco's position regarding this change order.

*Colorado Log Homes:*  Samco has said that it has deduction of $11,029.18.  I would like to know the nature of those deductions and have backup for them.

*Walker's Inc.:*  On April 26, 2013, I sent you an letter asking for a breakdown on the deductive change order and back-charges. I also asked you to address Mr. Walker's contention that prior to his refusal to perform maintenance work on the project Samco had already breached the contract by failing to pay his company in accordance with the contract.

*Crow Paving:*  We need to know why the undisputed portion of the claim has not been paid.

*Faulkner Company:*  Samco has said that it has deductions in the amount of $6,100 and back-charges in the amount of $1,773.86



### RLI INSURANCE COMPANY'S DEMAND

Pursuant to the provisions of the "Agreement of Indemnity" found under the section titled "Settlements" the Surety demands that you deposit with the Surety, cash or collateral satisfactory to the Surety in the amount of $326,816.44 to be used in paying any judgment or judgments rendered or that may be rendered

### CONCLUSION

We look forward to your response and are committed to working together with you to resolve these matters. While I request that you call me immediately, I also request a written response to this letter.

Sincerely,

Kirk Austin
kirk.austin@rlicorp.com
312-360-1566 Ext 1229

Cc:

***VIA US MAIL
& FACSIMILE***:  (501) 376-9612
Everett O Martindale
902 West Second Street
Little Rock, Arkansas 72201